JABEZ C. CROOKER, GUARDIAN, V. MARION W. C. SMITH.

FILED FEBRUARY 4, 1896.   No. 6010.

1. **Guardian and Ward: REMOVAL OF GUARDIAN.** The county court has power to remove a guardian, upon notice, when he has become incapable of discharging his trust or evidently unsuited therefor. (Compiled Statutes, ch. 34, sec. 28.)

2. ———: ———. The disability justifying a removal need not be one arising after the appointment. A guardian may be removed whenever found unsuitable.

3. ———: ———. The word "unsuitable" in the statute applies to any case where the guardian is incapable or not in a situation to properly protect his ward's interests.

4. ———: ———. Corruption or malfeasance is not necessary to authorize the removal of a guardian. Evidence of a failure to properly protect the ward's rights is sufficient proof of "unsuitability."

ERROR from the district court of Lancaster county.   Tried below before FIELD, J.

*Jabez C. Crooker, pro se.*

References: Bingham, Law of Infancy, 172; *Rowan v. Kirkpatrick*, 14 Ill., 1; *Bond v. Lockwood*, 33 Ill., 212; *Davis v. Harkness*, 1 Gil. [Ill.], 173.

*Abbott, Selleck & Lane, contra.*

References: *In re Johnson*, 54 N. W. Rep. [Ia.], 69; Cooley, Torts, pp. 523, 525; Schouler, Domestic Relations, secs. 316, 348, 352, 354.

IRVINE, C.

This was a proceeding instituted in the county court of Lancaster county for the removal of

Jabez C. Crooker, who had theretofore been ap-
pointed guardian of the estate of Marion W. C.
Smith, a minor.    February 20, 1889, Crooker was
appointed guardian, and May 20, 1890, a petition
was filed in the county court charging that
Crooker had failed to make a report, although he
had sold real estate belonging to the ward.    The
prayer was for an order requiring the guardian to
report and account.    An order was made requir-
ing the guardian to file his report on or before
May 29.    On May 28 the report was filed, and sub-
sequently exceptions thereto were filed on behalf
of the ward.    June 26 there was filed on behalf of
the ward a petition praying for the removal of the
guardian, the charges made being, in brief, that
the guardian had paid out the sum of $103.25 of
the ward's estate in discharge of a personal debt
of one George D. Smith, and sought to charge the
ward therefor; that the ward, although over the
age of fourteen years when the appointment was
made, and consenting thereto, had since found her
relations with her guardian unpleasant, and that
she wished him removed.    On hearing by the
county court it was found that the guardian had
not reported in the time required by law; that he
had paid out $41.30 without authority of law;
that the guardian, because of his age and tem-
perament, was unsuitable for his trust; and that
the ward complained of existing unpleasant rela-
tions; wherefore it was ordered that the guardian
be removed and that his report be allowed except
said sum of $41.30.    An appeal was taken to the
district court, where the matter was again tried,
with similar findings, except that the amount
found to have been unlawfully paid out was
$56.75.    A decree was there entered removing the

guardian and rendering judgment for the last named sum. The guardian prosecutes error.

It is first urged that the county court was without authority to remove the guardian; that is, that the proceedings were without jurisdiction. Section 28, chapter 34, Compiled Statutes, provides: "When any guardian, appointed either by the testator or court of probate, shall become insane, or otherwise incapable of discharging his trust, or evidently unsuitable therefor, the court, after notice to such guardian and all others interested, may remove him." This provision is in the chapter having reference to guardians and wards, and the court referred to, when taken with the context, is evidently the court which is now called the "county court," which has succeeded in probate matters and matters of this character to the jurisdiction of the probate court in existence when the statute was passed. The county court had jurisdiction, upon proper notice, to remove the guardian if he had become insane or otherwise incapable of discharging his trust or evidently unsuitable therefor. No question is raised in this case as to the sufficiency of the notice given. We think to construe the language as referring only to disabilities occurring after the appointment of the guardian would be to give it a construction at once strained and impolitic. It never could have been the intent of the legislature that a guardian once appointed should obtain an inalienable vested right to the office. He is an officer of the court charged with duties of a fiduciary character. It is the duty of the court to see that these duties are performed; and it is within the power of the court to remove an incompetent guardian in order to protect the estate of the ward, although such

incompetency existed at the time of the appointment.

The only other question in the case is whether the findings of the court were sustained by the evidence, and whether those findings show that the guardian was unsuitable for discharging his trust.  Some of the facts are as follows:  The ward was the daughter of George D. Smith and Marion Smith.  Marion Smith was seized of a lot in the city of Lincoln.  She died, and Crooker, with the consent of the ward,—but this consent obtained at the instance of her father, George D. Smith,—was appointed guardian.  Five days thereafter he made application to the district court of Lancaster county to sell the lot in question, alleging that its improvements were in a dilapidated condition and in need of repairs;  that there were delinquent taxes thereon;  that no personal property had come into his hands, and that the funds to be realized from the sale were necessary for the education and maintenance of the ward.  To this petition on the same day there was filed an answer by Smith admitting that the ward's mother had died seized of the title to the lot, but alleging that he had furnished the consideration money and that she held the title in trust for him.  On March 3 a stipulation was filed, signed by Smith and by the guardian, whereby it was agreed that Smith had purchased and paid for the lot the title to which had been taken in the name of Smith's wife, the ward's mother;  that the estate of the ward therein was two-fifths and that of Smith three-fifths;  that a sale should be ordered and out of the proceeds there should be paid to the guardian for the ward two-fifths, and to Smith three-

fifths, less costs, taxes, and assessments. A license to sell was granted on that stipulation; but thereafter a motion was filed showing that the authority to sell on a license granted under such a stipulation was deemed by learned lawyers to be invalid, and that a sale could not be made thereon; wherefore it was stipulated that the license be set aside. Then Smith filed an amended answer claiming only as tenant by curtesy; and on this there was a hearing and license to sell given, fixing the interest of the ward at three-fifths and that of Smith at two-fifths, and directing that the costs, taxes, and assessments be paid out of the ward's share. The license authorized a private sale, and a sale was negotiated with one Veith for $2,700. It was then discovered that there was of record a judgment against Smith for about $280. A cancellation of this was procured for the sum of $103.25. The lot was sold to Veith and the sale confirmed without any disclosure, so far as appears from the record, of the satisfaction of the judgment or its disposition. Veith paid $1,500 in cash and gave two notes, one for $200 and one for $1,000, secured by mortgage, for the balance of the purchase money. Out of the cash payment the costs, taxes, and assessments, and the $103.25 in satisfaction of the judgment were paid, and the remainder was paid to Smith in discharge of his two-thirds interest in the land. The $103.25 was charged to the ward. The guardian retained the two notes and a very small balance in money, representing the ward's interest. Comment on these proceedings is hardly necessary. The guardian, in the first place, entered into a stipulation which he had no right to make, admitting facts which might de-

prive his ward of any beneficial interest in the land. The vice of this proceeding was so apparent that the parties thereto were compelled on their own motion to set it aside, because no one who took counsel on the matter would purchase the lot on such a record. The proceedings by which the ward's interest was finally determined, and the taxes and assessments ordered paid out of that interest, are not here reviewable; but in pursuance of those proceedings the guardian by private arrangement disposed of a portion of his ward's interest in the proceeds by discharging a judgment which was not even an apparent lien on his ward's estate. It was a judgment against Smith, in whom the title had never been, and could not be a lien unless it might be upon Smith's life estate. Having done this, while the proceedings were to obtain money for the maintenance and education of his ward, he gave practically all the money realized to the father in satisfaction of his life estate, and retained for his ward only the evidences of indebtedness. He failed within the time required by law to report these proceedings to the county court, and did not report at all until compelled by order of the court to do so.

From the brief filed by the guardian it is evident that he considers the findings of the county and district courts as equivalent to a conviction of corrupt practice on his part. The findings have no such effect, and this opinion has no such effect. The record merely shows that, perhaps through inadvertence or otherwise innocently, the guardian had failed to properly care for the interests of the ward. He had done several things to her disadvantage which he had no right to do. We

think the word "unsuitable" in the statute is very broad in its meaning, and applies to every case where the guardian for any reason is shown not to be capable of or not in a situation to suitably protect his ward's interests. Judged by this test the evidence amply warranted the county and district courts in their findings.

JUDGMENT AFFIRMED.