IN RE GUARDIANSHIP OF EDWARD CARSTENS, AN INCOMPETENT PERSON. WILLIAM H. LAMME, APPELLEE, V. RICKIE CARSTENS, APPELLANT.

37 N. W. 2d 581

Filed May 26, 1949. No. 32614.

*Sidner, Lee & Gunderson,* for appellant.

*Spear, Lamme & Flory,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

On June 21, 1943, the county court of Dodge County appointed Rickie Carstens guardian of the person and estate of Edward Carstens, incompetent. On December 22, 1947, the ward, by his next friend and attorney, filed a petition in the county court praying for removal of the guardian and appointment of another upon the ground that she was evidently unsuitable to so act, and that the best interests and welfare of the ward required her removal. The guardian answered, denying generally and affirmatively alleging her financial accounting for the

ward's estate and her competency to act as guardian.

The county court, after hearing upon the merits, entered an order finding and adjudging that the guardian was evidently unsuitable to longer act as such, and removed her. Upon appeal to the district court, that judgment was affirmed. Motion for new trial was overruled, and the guardian appealed to this court, assigning as error substantially that: (1) The judgment was contrary to law in the light of a proper construction of section 38-507, R. S. 1943; and that (2) the court erred in its refusal to grant a new trial upon the ground of newly discovered evidence. We conclude that the assignments should not be sustained.

Generally speaking, the ward did not charge the guardian with any corruption or malfeasance in the administration of his estate. The primary issue presented to the county court and the district court was whether or not, within the purview of the statute, and under the circumstances appearing in the evidence, the guardian was "evidently unsuitable" as guardian to longer protect the ward's rights and interests by continuing to act as guardian of his person and estate.

The record discloses that, at time of trial, the ward was unmarried, and 66 years of age. He was the owner of a valuable farm in Dodge County, and approximately $7,000 in cash. He had two unmarried sisters, one of whom was the guardian. On May 4, 1943, upon request of his sisters, he was committed to the Norfolk State Hospital as an alcoholic. The guardian was subsequently appointed upon a petition filed by her.

On October 12, 1944, the ward was paroled from the institution to his guardian, and thereafter lived with his sisters at Scribner for almost a year. He was returned to the hospital on November 21, 1945, at his guardian's request. Upon return, he was suffering from acute alcoholism and early senile changes, which became of serious consequence only when he was under the influence of alcohol.

The ward had few complaints, caused no trouble, and made a satisfactory adjustment while in the hospital. While there, however, he repeatedly complained of long-standing indifference by the sisters concerning his welfare, and his serious differences with and ill-feelings toward them. He expressed a distrust of their handling of his property and money, insisting that they gave him but little, and used and wanted his property for their own purposes.

There is undisputed medical testimony of physicians at the hospital, who examined and cared for him while there, that he was eligible for parole and had been so eligible since prior to December 30, 1947, but that he had not been and should not be paroled again so long as the sister was guardian, because her indifference for his welfare, and his quarrels and differences with her would cause emotional reactions preventing any assurance of recovery. On the other hand, it was their opinion that upon her removal and the appointment of another guardian, not a relative but one in whom the ward had confidence, and that if he had a residence elsewhere than with his sisters, such prognosis would be good—that is, he could be then paroled, and under such circumstances would have a fifty-fifty chance for recovery.

The ward testified, intelligently recalling the date of his commitment and parole, his conduct and events during that period, and his return to the hospital. He testified concerning the indifference of his sisters and his long continued differences and incompatability with them, and expressed a desire that a stranger, a businessman, should be appointed his guardian.

The guardian testified, admitting that she had serious differences with the ward relating to his property, money, personal conduct, and affairs. She testified that he was harsh and untidy, and that she was afraid of him. She frankly admitted that she wanted to remain his guardian so that she could continue to have charge of his money and property and keep him in the hospital at

Norfolk, in spite of the physicians' testimony that it would without doubt´ be safe, proper, and fitting to release him on parole if she were removed as guardian. We find no competent evidence of threats or other conduct by the ward justifying her asserted fear of him.

Section 38-507, R. S. 1943, provides: "When any guardian, appointed either by the testator or county court, shall become insane, or otherwise incapable of discharging his trust, or evidently unsuitable therefor, the court, after notice to such guardian and all others interested, may remove him; * * *."

It is generally the rule that where the grounds for removal are enumerated by statute, removal cannot be had on other grounds. See, 39 C. J. S., Guardian and Ward, § 45, p. 65; 28 C. J., Guardian and Ward, § 140, p. 1101. It will be noted, however, that the foregoing statute does not attempt to specifically enumerate the causes for removal, but gives the judge of the county court a right generally to include any physical or mental condition or behavior of the guardian within the various cases that may arise where the exercise of such power of removal would be judicious in order to properly and suitably protect the rights and interests of the ward.

This court has never passed directly upon a factual situation identical with that presented at bar. However, in Crooker v. Smith, 47 Neb. 102, 66 N. W. 19, having a similarity in some respects, and relied upon by the guardian, this court held: "The county court has power to remove a guardian, upon notice, when he has become incapable of discharging his trust or evidently unsuited therefor. (Compiled Statutes, ch. 34, sec. 28). * * *

"The word 'unsuitable' in the statute applies to any case where the guardian is incapable or not in a situation to properly protect his ward's interests.

"Corruption or malfeasance is not necessary to authorize the removal of a guardian. Evidence of a failure to properly protect the ward's rights is sufficient proof of 'unsuitability.' "

In the opinion it was said: "It never could have been the intent of the legislature that a guardian once appointed should obtain an inalienable vested right to the office. He is an officer of the court charged with duties of a fiduciary character. It is the duty of the court to see that these duties are performed; * * *. We think the word 'unsuitable' in the statute is very broad in its meaning, and applies to every case where the guardian for any reason is shown not to be capable of or not in a situation to suitably protect his ward's interests."

The last sentence aforesaid was quoted with approval in In re Guardianship of Timperley, 141 Neb. 604, 4 N. W. 2d 603. See, also, 39 C. J. S., Guardian and Ward, § 45, p. 66, and cases cited in notes 13, 17, and 21.

In re Guardianship of Sherman, 42 Cal. App. 2d 251, 108 P. 2d 717, relied upon by the guardian, is distinguishable because based upon a statute setting forth many specific, as distinguished from general, grounds for removal, thereby having little similarity with our own.

A guardian may not be removed arbitrarily or at the mere caprice of the court or the complaining party, but since a guardian is an officer of the court, and as such charged with duties fiduciary in character under its supervision, and the statute is general in character, the trial court is, within the purview thereof, allowed a broad judicial discretion in the matter of removal or refusal to remove a guardian, and this court will not interfere with the exercise of such discretion unless it clearly appears that it has been abused. See, 28 C. J., Guardian and Ward, § 157, p. 1107; 25 Am. Jur., Guardian and Ward, § 56, p. 39, citing In re Guardianship of Nelson, 148 Iowa 118, 126 N. W. 973, Ann. Cas. 1912B 974.

In the light of the situation presented in the case at bar, we conclude that the trial court did not abuse its discretion, and that the first assignment of error has no merit.

In motion for new trial, the guardian assigned, among other reasons, newly discovered evidence as a ground

therefor. It was supported only by her own affidavit, which appears in the bill of exceptions. To set it forth at length would serve no purpose. It is sufficient for us to say that the showing made therein was insufficient.

It is generally the rule that to make a sufficient showing for new trial upon the ground of newly discovered evidence, the proof in support thereof must show that such evidence was then available which neither the litigant nor his counsel could have discovered by the exercise of reasonable diligence, that it was not merely cumulative, but competent, relevant, and material with relation to a material issue, and of such character as to reasonably justify a belief that its admission would probably bring about a different result if a new trial were granted. See, Wiegand v. Lincoln Traction Co., 123 Neb. 766, 244 N. W. 298; Erwin v. Watson Bros. Transfer Co., 129 Neb. 64, 260 N. W. 565; Jensen v. John Hancock Mutual Life Ins. Co., 145 Neb. 409, 16 N. W. 2d 847.

The foregoing rule has application to the second assignment, and based thereon we conclude that the trial court did not err in its refusal to grant a new trial.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.